■ ALVIN J. BRODSKY, Appellant, v JOHN NERUD et al., Respondents.—In an action to rescind the sale of a horse and for money damages, the plaintiff appeals from a judgment of the Supreme Court, Nassau County, entered May 31, 1978, which is in favor of the defendants and against him, upon the trial court's dismissal of the complaint at the close of his case, at a nonjury trial. Judgment reversed, on the law, and new trial granted, with costs to abide the event. The plaintiff was the successful claimant of a racehorse at a claiming race run at Aqueduct Racetrack on December 6, 1977. The *Daily Racing Form,* the "Aqueduct Official Racing Program" and the "Affidavit of Ownership" delivered to the plaintiff after the race, all described the horse as a colt. The plaintiff took possession of the horse after the race and brought it to the stables of his trainer. On December 7, 1977 the trainer returned to the track on another matter and saw a posted notice that the sex of the horse in question had been incorrectly listed in the program as a colt; the horse was, in fact, a gelding. The plaintiff alleges that since he intended to use the horse for breeding purposes, it is useless to him. He also alleges that the first time he learned that the horse was a gelding was the day after the claiming race, when the trainer saw the notice. Upon learning that fact, the trainer went to one of the track stewards and explained what had happened. The stewards and the track conducted an investigation into the matter. However, the stewards denied the protest and did not permit the plaintiff to withdraw his claim. Upon rejection of the protest the plaintiff brought this action for rescission and damages for the purchase price of the horse, and the fair and reasonable value of the maintenance of the horse from December 6, 1977. The answer interposed by the horse's former owner, defendant Nerud, stated that prior to the running of the claiming race, he informed the defendant New York Racing Association (NYRA) that the horse was a gelding. In a pretrial deposition that was incorporated into the trial record, Nerud stated that the horse was gelded at his instruction on February 12, 1977. In its answer, the NYRA alleged that it had corrected the mistake in the racing program by way of a public address announcement and the posting of a notice prior to the running of the race. In addition, the NYRA's answer charged Nerud with any negli-

gence associated with the misrepresentation of the horse's sex. In light of the facts adduced at trial, and the conflicting arguments of the defendants, Special Term erred in dismissing the complaint at the close of the plaintiff's evidence for failure to make out a prima facie case. The plaintiff correctly argues that even an innocent misrepresentation is a sufficient ground for rescission (see *Seneca Wire & Mfg. Co. v Leach & Co.,* 247 NY 1, 7-8). It should also be noted that one of the provisions of the rules of the State Racing and Wagering Board, dealing with claiming races, states (9 NYCRR 4038.5 [a]): "All claims shall be passed upon by the stewards, and the person determined at the closing time for claiming to have the right of claim shall become the owner of the horse when the start is effected, whether it be alive or dead, sound or unsound or injured before or during the race or after it, *unless the age or sex of such horse has been misrepresented"* (emphasis supplied). The NYRA argues that because it was not a party to any contract entered into by the plaintiff, no cause of action based on misrepresentation can be asserted against it. It further contends that since there is neither a contractual nor fiduciary relationship between it and either Nerud or the plaintiff, any unintentional mistake or misrepresentation is not actionable. Although the plaintiff's complaint in this case is worded in terms of a cause of action for rescission, it should be deemed sufficient to give the NYRA notice that its representation (for example, in the track program) led to the plaintiff's reliance and ultimate damage. The failure to ascertain or properly list the sex of the horse, or to effectively communicate the correct information upon discovery of the mistake, may have constituted actionable negligence on the NYRA's part. It is not material that the complaint is cast in terms of rescission and not some other cause of action. "The CPLR [has] abolished technical rules of pleading * * * Thus there is only one form of action (CPLR 103, subd. [a]) and the pleading need give only notice of the facts intended to be proved and the material elements of the action (CPLR 3013). The court has the power to grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded (CPLR 3017, subd. [a])" *(McGinnis v Bankers Life Co., Des Moines, Iowa,* 39 AD2d 393, 398-399; cf. *Lane v Mercury Record Corp.,* 21 AD2d 602, affd 18 NY2d 889). The plaintiff also sought relief based on breach of an express warranty by the horse's seller (see Uniform Commercial Code, § 2-313). However, Special Term found that no express warranty was made by the seller, Nerud. The plaintiff argues on appeal that the *Daily Racing Form* and the track's racing program are the only means available to a seller to offer a horse to potential purchasers at a claiming race and, therefore, the description of the horse in those publications constituted an express warranty. As noted, Nerud stated that he communicated to the NYRA that the horse was a gelding. That information was then included in the track program and, whether correctly or erroneously printed, constituted an express warranty. It is a matter of defense for Nerud to show that he conveyed the correct information. Special Term also found that even if there was a warranty, the plaintiff did not reject the horse within a reasonable time (see Uniform Commercial Code, § 2-602; cf. Uniform Commercial Code, § 2-608 ["Revocation of Acceptance in Whole or in Part"]). The defendants contend that if the plaintiff had inspected the horse after the race, he would have discovered the defect. They conclude that having had a reasonable opportunity to so inspect, the plaintiff should be deemed to have accepted the horse (see Uniform Commercial Code, § 2-606, subd [1], par [b]). In support of their position the defendants rely on *Miron v Yonkers Raceway* (400 F2d 112). In *Miron,* a racehorse was sold to the purchaser at an auction under a warranty that

the horse was sound. On the day after the sale it was discovered by the purchaser that the horse had a fractured leg bone. The purchaser demanded that the seller take back the horse, but the seller refused and brought suit for the purchase price. The "Terms and Conditions of Sale", which were incorporated by reference into the contract for the sale of the horse, provided that where the seller announces a "warranty or guarantee", it would not be effective "beyond 24 hours after the fall of the Auctioneer's hammer". The trial court found that the purchaser had not rejected the horse within a reasonable time, after having had an opportunity to inspect it. The trial court also noted that the fact that the subject matter of the sale was a live animal had a bearing on what is a reasonable time with respect to inspection and rejection. Since it was found customary within the industry to have a veterinarian or trainer examine a horse's legs, and the purchaser failed to have this done, the court held that he had passed up a reasonable opportunity to inspect the horse. Therefore, an attempted rejection the next day was untimely. The plaintiff argues that the horse in *Miron* was purchased at an auction where a potential purchaser is able to inspect it. He contends that no inspection is permitted at a claiming race. However, whether inspection was permitted here or not, there is another important distinction between these two situations. In *Miron* the injury to the horse could have occurred *after* the purchaser took possession, and since the purchaser failed to inspect, he could not establish that the condition existed at the time of purchase. Here, it is conceded that the horse was a gelding at the time the claiming race was run. In addition, in *Miron* the court noted that what constitutes a reasonable time to inspect and/or reject, depends "upon an evaluation of all of the circumstances" (400 F2d at p 118). The court specifically noted (p 119) that a rejection on the day after the sale might be timely "if another sort of defect were involved and we took into account that the customary type of inspection at the time of sale might not disclose aspects of a horse's soundness * * * and that these aspects, unlike the condition of the legs, would be very unlikely to change overnight." The court's view in *Miron* is in accord with subdivision (2) of section 1-204 of the Uniform Commercial Code, which states that "What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." As noted earlier, upon discovery that the horse was a gelding, the plaintiff filed a protest with the stewards at the track. This was in accord with 9 NYCRR 4022.16, which states: "The stewards have power to determine all questions arising in reference to racing at the meeting, subject to appeal to the commission." The defendants argue that the plaintiff did not exhaust his remedies, since he took no appeal to the commission. However, 9 NYCRR 4039.5, dealing with appeals from stewards' decisions, states: "Every objection shall be decided by the stewards, but their decision shall be subject to appeal in writing to the commission so far as relates to points involving the interpretation of this Article or to any question other than a question of fact." Therefore, an appeal may not have been available to the plaintiff. In light of all the circumstances of this case, we conclude that the plaintiff made out a prima facie case for rescission of the sale and to recover damages for negligence. He has also made a prima facie showing of breach of an express warranty, and of a timely rejection of the horse, after the discovery that it was a gelding. Hopkins, J. P., Titone, O'Connor and Cohalan, JJ., concur.